UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-20738-CIV-JORDAN/MCALILEY

PLATYPUS WEAR, INC. and
PLATYPUS WEAR, INCORPORATED,
PW INDUSTRIES, INC. and ALEXANDRA
DE LEON,

 Plaintiffs/Counter-Defendants,

v.

HORIZONTE FABRICACAO
DISTRIBUICAO IMPORTACAO
E EXPORTACAO LTDA., a/k/a
HORIZONTE LTDA., FERNANDO CALDAS,
JR., and ROBERTO RAMOS,

 Defendant/Counterclaimants.
_____/

**REPORT AND RECOMMENDATION ON PLAINTIFFS' MOTION
FOR SANCTIONS AGAINST HORIZONTE FOR CORRUPTING
PAYMENTS TO THIRD PARTY FACT WITNESSES [DE 153]**

Pending before this Court is Plaintiffs' (together PWI) Motion for Sanctions Against Horizonte For Corrupting Payments to Third Party Fact Witnesses. [DE 153, 154].[1] Plaintiffs argue that Horizonte's counsel made monetary payments and promised additional consideration to Mark Baagoe, a third party fact witness, in violation of Florida Bar Rule of Professional Conduct Rule 4-3.4(b). Specifically, Plaintiffs allege the following: (1) Horizonte's counsel paid Baagoe $150.00 an hour (totaling $5,386.30) to collect evidence

---

[1] The Motion was referred by the Honorable Adalberto Jordan for a Report and Recommendation. [DE 174].

that Horizonte could have obtained for free through the use of a subpoena [DE 153, p. 4-7]; (2) Horizonte paid Baagoe $15,000 for the assignment of his purported rights in the Bad Boy design, and for his express cooperation in assisting Horizonte in this lawsuit [DE 153, p. 7-8]; and (3) Horizonte's counsel promised Baagoe a design job with Horizonte and public recognition for a Bad Boy design, contingent upon Horizonte's success in this case [DE 153, p. 8-9].  Plaintiffs also argue that Horizonte's counsel made monetary payments for producing evidence to two other third party fact witnesses, Jeff Theodosakis ($3,394.15) and Michael Aguirre ($750), and did so in violation of Rule 4-3.4(b).

Plaintiffs contend that the evidence from these three witnesses is the only evidence that provides the foundation for Horizonte's claims regarding the Bad Boy copyrights.  Since, according to Plaintiffs, this evidence has been secured in a corrupt manner, Plaintiffs ask the Court for a series of remedies:  (1) dismissing with prejudice Horizonte's copyright claims, (2) "enjoining Horizonte from further challenging PWI's copyrights," (3) prohibiting Horizonte from introducing any evidence from these third party witnesses, including their testimony and the documents they produced, and (4) instructing the jury that Horizonte and its attorneys made improper payments to fact witnesses.  [DE 153, p. 20].  The Motion has been thoroughly briefed,[2] and after consideration of the submissions of the parties and the record, and for the reasons that follow, this Court recommends that the Motion be denied.

---

[2] Horizonte filed a response to the Motion [DE 197], and Plaintiffs filed a reply [DE 209, 210].  Horizonte also filed a Supplemental Submission [DE 314], to which Plaintiffs responded [DE 317].  Lastly, Plaintiffs filed a Supplemental Authority in support of their Motion. [DE 353].

I.     **Relevant Factual History**

A.     **Jeff Theodosakis and Michael Aguirre**

Jeffrey Theodosakis is the former president of Life's A Beach, Inc., the company that first used the Bad Boy logo. [Theodosakis Deposition, p. 9, DE 197-1]. In late 2006 Horizonte's counsel contacted Theodosakis and inquired whether he had any records related to Bad Boy. [*Id.*, p. 288-289]. Theodosakis responded that he had records, from twenty-five years ago, all of which were in a storage facility. [*Id.*]. After having several phone conversations with Horizonte's counsel, Theodosakis asked that he be paid for his time spent searching for the records. [*Id.*, p. 295].[3] Later, after retrieving the records, Theodosakis sent Horizonte's counsel a bill for $3,394.13, representing 10.5 hours of time gathering and retrieving records, including travel time (at $300 an hour), plus tax. [*Id.*]. On January 8, 2007, Horizonte's counsel sent an email to Theodosakis confirming payment for "the valuable time you are expending," and informing him that counsel had determined that the payment was permissible so long as it did not induce or influence testimony. [DE 197-2].

---

[3] Specifically, Theodosakis stated at his deposition that:

> Well, because we were on our third phone call or so, and I'm saying "Guys, you know, I'm busy trying to run a couple of businesses here doing Spy and Prana. My time's very valuable. I get $300 an hour for consulting . . . and if you guys need me to spend my time to go on a weekend or an evening to go find records that have nothing to do with me to help some case, I'm not going to do it for nothing. You guys want to pay me my consulting fee, I'll tell you how many hours it takes for me to sort through this stuff and do it and travel and do all the things I need to do. And I'm going to bill you for it." And they said "Okay."

[Theodosakis Deposition, p. 294-95, DE 197-1].

3

Horizonte's counsel sent Theodosakis a check for $3,394.13, dated January 17, 2007. [DE 154-21].

Michael Aguirre is a former advertising agent for Life's a Beach, Inc. [DE 197-3]. Theodosakis provided Horizonte's counsel with Aguirre's contact information. In April 2007, Horizonte's counsel contacted Aguirre and asked him to search for, and send, old copies of Bad Boy artwork. [DE 197-3]. Later, Theodosakis telephoned Aguirre and suggested that he give Horizonte's counsel an accounting of the time spent locating the documents. [*Id.*]. On April 17, 2007, Aguirre wrote to Horizonte's counsel informing them that he had spent 5 hours finding the materials, at $150 an hour, for a total of $750.00. [DE 197-4]. Horizonte's counsel responded to Aguirre's correspondence confirming payment (a check for $750.00 was attached), and stating that it appeared that they could pay for the time taken to produce evidence, but were not paying for the content of testimony. [DE 154-22].

### B.   Mark Baagoe

Mark Baagoe is the artist who created, or helped to create,[4] the original Bad Boy design. According to Horizonte's counsel, they contacted Baagoe in the summer of 2007 after Theodosakis identified him as the creator of the Bad Boy logo. [DE 197-9; *see also* Theodosakis Deposition, p. 312-13, DE 197-1]. At the time, Baagoe lived in Hawaii, and had been working as a construction worker, earning $35 per hour. [Baagoe Deposition, p.

---

[4] There is conflicting evidence in the record whether Baagoe is the sole creator of the logo, or whether the logo design was a collaborative effort. [*Compare* DE 154-4 with Theodosakis Deposition, p. 218-19, DE 154-2].

90-91, DE 154-1].

### *Payments for collecting evidence*

Horizonte's counsel sent Baagoe a letter asking to speak with him about the Bad Boy design, and to purchase samples. [DE 154-7]. Before contacting Horizonte's counsel, Baagoe contacted Theodosakis, and was told that Theodosakis had charged $150 an hour[5] to collect the samples of artwork. [Baagoe Deposition, p. 31, DE 154-1]. When Baagoe first spoke with Horizonte's counsel, he agreed to look through his files and gather samples of artwork for $150 an hour, and counsel agreed. [*Id.*, p. 93]. In August 2007, Baagoe sent Horizonte's counsel two invoices: (1) in the amount of $2,400 for 16 hours at $150 an hour [DE 154-8], and (2) in the amount of $2,386.30 for 15 hours at $150 an hour, plus $136.30 for shipping [DE 154-10]. Horizonte's counsel paid Baagoe in full for these invoices. [DE 154-9, DE 154-11]. Additionally, in January 2009, two weeks before Baagoe was subpoenaed by Plaintiffs to testify at a deposition *duces tecum* [DE 154-12], Baagoe sent Horizonte's counsel another invoice for $600 for 4 hours at $150 an hour, which counsel paid. [DE 154-17, p. 8, DE 154-13].

### *Assignment*

In October 2007, Baagoe executed an assignment agreement whereby he agreed to assign any rights he had in the Bad Boy logo to Horizonte, and among other things, to assist

---

[5] Although Baagoe testified that Theodosakis told him he charged Horizonte $150 an hour, the record reflects that Theodosakis charged $300 an hour. *See* Theodosakis Deposition, p. 294-95, DE 197-1; DE 197-2.

Horizonte in registering and enforcing the Bad Boy copyright in the United States and any other country. [DE 154-14; DE 154-18]. Horizonte paid Baagoe $15,000 for this assignment. [DE 154-18].[6]

***Employment Offer***

Plaintiffs contend that Horizonte's counsel improperly offered Baagoe a design job at Horizonte contingent upon Horizonte winning this case, and point to the following testimony at Baagoe's first deposition:

> Q: Was it your understanding from your communication with Mr. Bikoff that you could expect to see those kind of opportunities coming [in] the future? That was part of the deal?
>
> A: Yes.
>
> * * *
>
> Q: And did you -- Have you, in fact, ever received any of those opportunities? That is, beyond the $15,000 check, did they offer you some other --
>
> A: No.
>
> Q: -- additional work?
>
> A: No.
>
> Q: So that hasn't come to pass, at least as of yet?

---

[6] There are two versions of the assignment agreement. One version has provisions, including the one for payment, not contained in the other. *Compare* DE 154-14 with DE 154-18. Horizonte has not explained why there are two versions of the agreement, but the existence of the two agreements does not seem important here as there is no dispute that Horizonte paid for the assignment.

6

>   A:   They -- He said that they had to -- they had to win the case for that to happen.

[Baagoe Deposition, p. 134, DE 154-1].

At his first deposition, Baagoe also testified that Horizonte's counsel told him that he would be "flying to Brazil," and "working as a consultant with Horizonte developing the character. Maybe talking in front of . . . kids," and would "get full recognition." [*Id.*, p. 243].

After his first deposition, Baagoe signed a declaration in which he stated the following regarding the alleged employment offer:

>   As I gathered old artwork, I mentioned to Horizonte that I have regularly told children in California and Hawaii that I am the BAD BOY's creator, and have shown them how to draw the BAD BOY figure. We discussed my possibly coming to Brazil sometime to do the same thing for children in Brazil, in recognition of my creation of the BAD BOY logo, but I understand that I was not offered a job or payment for this, and ultimately, I assigned my rights in the BAD BOY logo for a flat amount of $15,000. I was not offered or paid anything else.

[DE 197-6, paragraph 11].

**II.   Analysis**

Plaintiffs argue that Horizonte's counsel violated Florida Bar Rule of Professional Conduct Rule 4-3.4(b)[7] in three ways: by making monetary payments to Baagoe, Theodosakis

---

[7] Horizonte argues that the rules of professional conduct for California, Washington, D.C. and Hawaii also apply to its counsel. Because Plaintiffs alleged only a violation of the Florida ethics rule, and the applicable rules for these states and are similar to Rule 4-3.4(b), I confine my analysis to Rule 4-3.4(b).

and Aguirre; by paying Baagoe $15,000 for the assignment of his rights in the Bad Boy design and for his cooperation in assisting Horizonte in this lawsuit; and by promising employment to Baagoe if Horizonte won this case. Plaintiffs ask this Court for a number of remedies, including dismissal of Horizonte's copyright claims and the exclusion of any evidence (testimony or documents) from Baagoe, Theodosakis or Aguirre.

Plaintiffs' arguments are not adequately supported by the law or evidence.

### A.   Payments for gathering evidence

Plaintiffs allege that Horizonte's counsel's payments to Baagoe, Theodosakis and Aguirre to collect evidence that Horizonte could have obtained for free through the use of a subpoena, was improper. According to Plaintiffs, the payments were not reimbursement for reasonable expenses or lost compensation, and were, in fact, prohibited inducements for testimony, in violation of Rule 4-3.4(b). [DE 153, p. 4-7].

The comments to the Rule and case law cited by Plaintiffs are clear that an attorney may not pay a fact witness for testimony. *See, e.g., Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters Non-Marine Association*, 865 F. Supp. 1516, 1526 (S.D. Fla. 1994),

---

Rule 4-3.4(b) provides in pertinent that: "A lawyer shall not . . . offer an inducement to a witness, except a lawyer may pay a witness reasonable expenses incurred by the witness in attending or testifying at proceedings . . . and reasonable compensation to reimburse a witness for the loss of compensation incurred by reason of preparing for, attending, or testifying at proceedings . . . ."

The Comment states, in part: "With regard to subdivision (b), it is not improper to pay a witness's expenses or to compensate an expert witness on terms permitted by law. The common law rule in most jurisdictions is that it is improper to pay an occurrence witness any fee for testifying. . . ."

affirmed in pertinent part at 117 F.3d 1328, 1335, n. 2 (11th Cir. 1997) (Rule 4-3.4(b) prohibits a lawyer from paying money or other rewards to witnesses in return for testimony); *Ward v. Nierlich*, Case No. 99-14227, 2006 WL 5412626, at *5 (S.D. Fla. Sept. 20, 2006)[8] (same).

However, Plaintiffs have not cited, and this Court is unaware of, any authority that interprets Rule 4-3.4(b) as barring counsel from compensating someone for their efforts in collecting evidence. The cases cited by Plaintiffs are authority only for the proposition that a lawyer may not pay a witness for testimony, but they go no further.

In *The Florida Bar v. Wohl*, 842 So.2d 811 (Fla. 2003), cited by Plaintiffs, the Florida Supreme Court affirmed a referee's finding that an attorney had violated Rule 4-3.4(b) when he helped to draft an agreement between his client and a fact witness that provided that the witness would provide "assistance" and receive compensation that included: (1) $25,000 for her first fifty hours of assistance, and (2) a potential "bonus" between $100,000 and over $1,000,000, depending on the "usefulness" of the information provided, which would be paid after a "culmination event" by which the client obtained a recovery. *Id.* at 813. The referee considered whether the agreement was an inducement to the witness, and focused on the "bonus" provision since it arose only if the client was successful and obtained a recovery. *Id.* There is no suggestion here that the witnesses were offered any payment that was

---

[8] Magistrate Judge Linnea R. Johnson's Report and Recommendation was adopted by the Honorable James C. Paine. *See Ward v. Nierlich,* S.D. Fla. Case No. 99-14227-CIV-PAINE, DE 499.

9

contingent upon the outcome of the case. While the court in *Wohl* reasoned that "a witness may not be paid unless the payments fall within the clearly delineated exceptions, such as payments for reasonable expenses," *id.* at 815, it did not take the next step Plaintiffs urge upon this Court, and hold that the Rule prohibits compensating a witness for his or her time spent gathering documents.[9]

Rule 4-3.4(b) specifically states that a lawyer may pay a witness "reasonable compensation to reimburse a witness for the loss of compensation incurred by reason of preparing for, attending, or testifying at proceedings." Horizonte argues that the payments made to Baagoe, Theodosakis and Aguirre were solely to compensate for their time locating and gathering documents and that no payments were made for testimony, and has submitted the deposition testimony and declarations of these witnesses to support their position. *See, e.g.,* Baagoe Deposition, p. 319, DE 197-8:

> Q: Have you ever been paid anything by Horizonte's counsel other than the payment for that assignment and for the time you spent gathering documents relating to this case?
>
> A: No.

*See also* Baagoe Deposition, p. 409, DE 314-3:

> Q: Have you received any payment from any party in this case for the time you've

---

[9] In their Notice of Filing Supplemental Authority [DE 353], Plaintiffs also cite to *Rocheux Int'l of New Jersey v. U.S. Merchants Financial Group, Inc.*, Case No. 06-6147, 2009 WL 3246837 (D.N.J. Oct. 5, 2009), to further support the argument that payments to fact witnesses are improper. That case is quite distinguishable, as counsel there had improperly listed the witness as an expert and paid him a fee to testify, when it was clear that he was a fact witness. *Id.*, 2009 WL 3246897, at * 3-4.

10

        taken to testify?

A:    No.

Q:    Has any party in this case offered you anything contingent on the outcome of the case?

A:    No.

                * * *

Q:    Have you allowed any party to influence your testimony in this case?

                * * *

A:    No.

Plaintiffs, on the other hand, argue that regardless of how Horizonte characterizes the payments they were, in fact, for testimony, and ask this Court to make that inference.[10]

Horizonte's payments to Baagoe, Theodosakis and Aguirre for their time and efforts collecting evidence do not fall within one of the clear exemptions set out in the Rule, nor do they fall within its clear prohibition. The evidence here does not support the conclusion here that Horizonte paid for these witnesses' testimony (conduct clearly prohibited by the Rule); neither is this a clear case of witnesses being reimbursed for "loss of compensation incurred by reason of preparing for, attending, or testifying at proceedings," (conduct which is allowed). Horizonte's payments certainly raise fair questions whether these witnesses are

---

[10] Plaintiffs allege that because Horizonte paid Baagoe at a rate of $150 an hour, substantially more than the $35 an hour he was earning as a construction worker at the time, this shows that the payments were not "reasonable compensation," and that they were really an inducement for his testimony. [DE 153, p. 14]. There is also evidence, however, that Horizonte's counsel paid Theodosakis and Aguirre at a rate typical for artists [see DE 197-3, ¶ 6]. That Baagoe, the creator of the design, was paid the same rate, does not in this instance, prove wrongdoing.

biased in Horizonte's favor as a result, or whether the witnesses may have altered their testimony to favor Horizonte. In my view, these are issues that are most reasonably addressed at trial. In bringing this Motion, PWI completely discounts the opportunity it will presumably have at trial for the trier of fact to hear from these witnesses directly about the events raised in the Motion, and to decide for themselves whether Baagoe's, Theodosakis' and Aguirre's testimony is worthy of belief.

PWI asks for extreme remedies here, which I do not believe are justified by this record. There is no hint in the record that the documents collected by the three witnesses have been fabricated in any manner, and yet PWI asks that they be barred from evidence. As for the credibility of the witnesses, for the reasons already offered, I think that can be addressed with vigorous cross-examination and argument. PWI justifies its request that Horizonte's copyright claims be dismissed, and that Horizonte be "enjoined" from other challenges to PWI's copyrights, by claiming that Horizonte's lawyers' conduct is so outrageous that it begs for these ultimate sanctions, and yet, Rule 4-3.4(b) does not clearly bar this conduct.[11] In sum, I do not believe PWI has justified the extreme remedies it seeks.

**B.     Payment to Baagoe for Assignment**

Plaintiffs argue next that the $15,000 Horizonte paid Baagoe for the assignment of his "purported" rights in the Bad Boy design, and for his "express cooperation" in assisting

---

[11] PWI also asks that the jury be instructed that Horizonte and its lawyers made improper payments to the three witnesses. It may well be that the trial court, after hearing all the evidence, may believe that an instruction of some form is appropriate. I believe that question is premature, and therefore I offer no recommendation in that regard.

Horizonte in this lawsuit, is inducement for testimony prohibited under Rule 4-3.4(b). [DE 153, p. 7-8]. To support this argument, Plaintiffs point to Baagoe's deposition where he testified that he informed Horizonte's counsel that he did not own any rights in the Bad Boy design: "I don't have any rights[,]" "so . . . how can you give me money for something I don't own?" and, "[t]hey're giving me money for . . . Bad Boy and I already explained to him that I don't own the rights to it." [Baagoe Deposition, p. 119, 121 and 242, DE 154-1]. Plaintiffs contend that because Baagoe acknowledged at his deposition that he did not own any rights in the Bad Boy design, and the assignment obligates Baagoe to cooperate in the registration and enforcement of the Bad Boy copyright, that Horizonte's payment for the assignment was an "express[] purchase[] [of] Mark Baagoe's cooperation in this lawsuit, as well as his signature on declarations for use in this case." [DE 153, p. 8].

Plaintiffs want the Court to conclude that Baagoe had no rights to assign, and that payment for the assignment was a sham - nothing more that a corrupt inducement for Baagoe's testimony. The Court is unwilling to draw this inference, as it appears that Baagoe's statements (such as, "I don't have any rights. . .") are not determinative of what rights he did, or did not, retain in the intellectual property. There is nothing improper about Horizonte, through its counsel, securing any intellectual property rights Baagoe did have, by entering into the assignment agreement, and I find no indication that the payment for the assignment was prohibited inducement.

On its face the assignment is legitimate. Although there are two versions of the

13

assignment (only one with reference to the $15,000 payment), and Horizonte has not explained the reason for the two versions, there is nothing in either version to suggest anything other than a lawful business transaction between Horizonte and Baagoe. There is no language in the assignment agreement itself that suggests that Horizonte "purchased" Baagoe's cooperation in this case.[12] The provision of the assignment that obligates Baagoe's assistance makes no mention of this lawsuit, and appears reasonable in the assignment of intellectual property rights.

In short, on this record, I can not find that Baagoe's assignment of rights to Horizonte was anything other than a legitimate business transaction, and I therefore conclude that Horizonte's payment for that assignment does not violate Rule 4-3.4(b).

### C. Offer of employment to Baagoe

Finally, Plaintiffs argue that Horizonte's counsel unlawfully induced Baagoe's cooperation by offering him a design job with Horizonte and public recognition for the Bad Boy design, contingent upon Horizonte winning this lawsuit. [DE 153, p. 8-9]. I have reviewed Baagoe's deposition testimony cited by Plaintiffs in support of their argument, as

---

[12] The assignment specifically requires Baagoe to:

> [A]ssist and cooperate with Horizonte in the registration and enforcement of copyright in the [Bad Boy design] and all derivatives thereof in the United States and any other country, and to promptly execute and deliver all documents requested by Horizonte in connection with its ownership, registration and enforcement of its copyright in the [Bad Boy design] and all derivatives thereof in the United States and any other country.

[DE 154-14, 154-18].

well as Baagoe's subsequent declaration and deposition testimony [*see* DE 197-6, DE 314-3], and find there is no evidence in the record that Horizonte's counsel offered Baagoe employment at Horizonte. At no point did Baagoe specifically testify that Horizonte's counsel offered him employment. Baagoe testified during his first deposition that Horizonte's counsel mentioned *the possibility* of traveling to Brazil to meet with Horizonte, and that he thought that it would be great to be recognized for creating the Bad Boy character. [*See* Baagoe Deposition, p. 133, DE 154-1]. He affirmatively states in his declaration that he "was not offered a job or payment for this . . . ." [DE 197-6, ¶ 11].[13] During his second deposition Baagoe affirmed that he was not offered anything contingent upon the outcome of this lawsuit. [Baagoe Deposition, p. 409, DE 314-3].

I do not believe the record supports Plaintiffs' contention that Horizonte's counsel offered Baagoe employment as inducement for his testimony, in violation Rule 4.3-4(b). Further, I am not persuaded by Plaintiffs' argument that any of Horizonte's counsel's comments about public recognition to the artist who created (or helped to create) the Bad Boy design, which comments appear innocuous, are prohibited inducement for testimony

---

[13] Plaintiffs argue that "[t]his Court should disregard Mr. Baagoe's declaration as a sham" because it contradicts his deposition testimony. [DE 209, p. 4; *see also* DE 317]. I have reviewed both, and read the declaration to expand and clarify Baagoe's testimony at his first deposition. Furthermore, Baagoe was deposed a second time, and Plaintiffs' counsel had the opportunity to, and did, cross-examine him about the declaration. [*See* Baagoe Deposition, p. 424-430, DE 314-3]. This Court can fairly consider the deposition testimony and the declaration in context.

Plaintiffs also ask this Court to view excerpts of Baagoe's video-taped deposition in order to assess his credibility. [DE 209, p. 6]. However, for the reasons already stated, this Court will not make a credibility determination at this juncture, as it is better left for trial.

under Rule 4.3-4(b). In any event, these are also matters that should be considered by the trier of fact, and inquired about on cross-examination. They do not justify the sanctions Plaintiffs seek.

**III.    Conclusion**

For these reasons I RECOMMEND that Plaintiffs' Motion for Sanctions Against Horizonte For Corrupting Payments to Third Party Fact Witnesses [DE 153], be DENIED.

**IV.    Objections Period**

Pursuant to Magistrate Rule 4(a), the parties may file written objections to this Report and Recommendation with the Honorable Adalberto Jordan within **14 days** of the date of this Report and Recommendation. Failure to timely file objections shall bar the parties from attacking on appeal any factual findings contained herein. *See RTC v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger*, 847 F.2d 745, 749-50 (11th Cir. 1988).

RESPECTFULLY SUBMITTED in chambers at Miami, Florida, this 8th day of January, 2010.

_____
CHRIS MCALILEY
UNITED STATES MAGISTRATE JUDGE

cc:    The Honorable Adalberto Jordan
       All counsel of record